

FILED

NOV 2 1 2013

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

THE PRINCETON EXCESS AND
SURPLUS LINES INSURANCE
COMPANY,

     Plaintiff,

v.                        Civil Action No. 3:12cv895

IMMIGRATION CENTERS OF
AMERICA - FARMVILLE, LLC,
<u>et al.</u>,

     Defendants.

### MEMORANDUM OPINION

This matter is before this Court on DEFENDANTS' MOTION TO DISMISS (Docket No. 6) filed by Immigration Centers of America – Farmville, LLC ("ICA"), Mark A. Flowers ("Flowers"), and Jeffrey D. Crawford ("Crawford") (collectively, "Defendants"). For the reasons set forth below, the motion is denied.

### BACKGROUND

According to the Complaint, ICA operated a detention center for illegal immigrants in Farmville, Virginia, under a contract with the United States Immigration and Customs Enforcement. Pl.'s Am. Compl. ¶ 8, Docket No. 14. ICA retained John B. Snelling ("Snelling") to establish a supply warehouse and maintain inventory for the detention facility. On January 19, 2011, Flowers and Crawford required Snelling to participate in a

"forced cell extraction training exercise."  Snelling was not trained for that assignment and his job description did not include such assignments as part of his duties.  Also, as the Defendant's knew, Snelling had a history of heart trouble. Nonetheless, Flowers and Crawford designated Snelling as the "point man" in the exercise.  A professional martial arts fighter weighing more than 275 pounds and standing over six feet tall played the role of the prisoner.  During the exercise, Snelling was crushed between the actor and four corrections officers.  Afterward, he collapsed.  After lying on the floor for fifteen to twenty minutes, Snelling finally received medical assistance.  Eventually he was transported to the Southside Community Hospital, where, later the same day, he was proclaimed dead.

Snelling's wife, Lillian Snelling ("Mrs. Snelling"), timely filed suit in the Circuit Court for the City of Richmond individually and as representative of Snellings' estate.  Mrs. Snelling sought $20 million in compensatory and punitive damages from ICA, Crawford, and Flowers for the wrongful death of her husband.  Mrs. Snelling's survival and wrongful death action sounds in negligence, negligence per se, and assault and battery.  She also alleges fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress (for ICA's failure to obtain and/or make a claim for

2

Snelling's $80,000 life insurance policy).   Henceforth, Mrs.
Snelling's suit will be referred to as the "State Litigation"
throughout this opinion.

ICA held a liability insurance policy (the "Princeton
Policy") with Princeton Excess Surplus & Lines Insurance Company
("Princeton") effective for the year 2011.   The policy named ICA
as the primary insured and contained limits of $3 million per
occurrence and in the aggregate, in excess of applicable
underlying limits.   Further, it provided the following:

> We will pay, on behalf of the insured, sums
> in excess of the amount payable under the
> terms of any Underlying Insurance as stated
> in the Schedule of Underlying Insurance that
> the insured becomes legally obligated to pay
> as damages because of injury or damage to
> which this insurance applies.
>
> This insurance is subject to the same terms,
> conditions, agreements, exclusions and
> definitions as the Underlying Insurance
> except as otherwise provided in this policy;
> provided, however, that in no event will
> this insurance apply unless the Underlying
> Insurance applies or would apply but for the
> exhaustion of its applicable Limit of
> Liability.

Id. ¶ 16.   The "Underlying Insurance" referred to in the
Princeton Policy is provided by two additional policies held by
ICA:  the National Union Fire Insurance Company liability
insurance policy (the "National Union Policy") with a $500,000
limit for each accident, and the Kinsale Insurance Company
liability insurance policy (the "Kinsale Policy") with a $1

3

million limit for each occurrence subject to a general aggregate limit of $2 million and a special limit for assault and battery claims of $250,000.

On July 30, 2012, ICA notified Princeton of the State Litigation and asserted that it was covered under the Princeton Policy. At that point, Kinsale already had accepted the defense of ICA, Flowers, and Crawford under a reservation of rights, and Princeton was so informed. National Union, on the other hand, had declined coverage under its policy with ICA. Id. ¶ 24. On November 2, 2012, Princeton sent a letter to ICA, Flowers, and Crawford notifying them that Princeton reserved all of its rights to decline coverage under the Princeton Policy.

Thereafter, pursuant to 28 U.S.C. § 2201, Princeton filed this declaratory judgment action seeking "a declaration that it has no obligation to defend or indemnify ICA, Mr. Flowers, and Mr. Crawford" in, or as a result of, the State Litigation. To properly allege diversity jurisdiction, Princeton filed an Amended Complaint, alleging the residency of each of its members. Am. Compl. ¶ 2. The Defendants filed this motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) on the ground that the Court lacked subject matter jurisdiction over the declaratory judgment action. The substantive allegations of the Complaint to which the motion to dismiss is directed were not changed in the Amended Complaint. Hence, "Defendants are not

4

required to file a new motion to dismiss simply because an amended pleading was introduced while their [original] motion was pending." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 570 (E.D. Va. 2004). Therefore, DEFENDANTS' MOTION TO DISMISS (Docket No. 6) is ripe for review.

Princeton asserted subject matter jurisdiction under 28 U.S.C. § 1332(a), the diversity of citizenship grant of jurisdiction. Princeton is an insurance company incorporated in Delaware with its principal place of business in New Jersey. ICA is a limited liability company, each member of which (Russell B. Harper, Ken Newsome, and Warren Coleman) is a citizen of Virginia. Flowers and Crawford are also citizens of Virginia. The amount in controversy exceeds $75,000; see St. Paul Reins. Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252 (5th Cir. 1998) ("When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the policy and the value of the right to be protected is plaintiff's potential liability under that policy."). The Defendants do not suggest otherwise. Instead, they contend that there is no case or controversy.

## A. Subject Matter Jurisdiction

There are two ways in which a defendant may challenge subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) by asserting that jurisdiction is lacking based on what appears in the complaint. In that circumstance, the Court may only consider the allegations in the complaint to determine if there is jurisdiction. However, "'a court may consider [a document outside the complaint] in determining whether to dismiss the complaint' where the document 'was integral to and explicitly relied on in the complaint' and there was no authenticity challenge." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 438 (4th Cir. 2011) (citing Blakenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Alternatively, a defendant may challenge jurisdiction under Rule 12(b)(1) by asserting that the jurisdictional allegations of the complaint are not true. Kerns, 585 F.3d at 192-93. In that instance, the court may consider facts related to jurisdiction by going beyond the allegations of the complaint and may indeed hold an evidentiary hearing.

The challenge here is brought pursuant to Rule 12(b)(1). Once the issue of jurisdiction is raised, the "burden of proving subject matter jurisdiction is on the plaintiff." Richmond,

Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

In large measure, the facts respecting subject matter jurisdiction are not in dispute. To begin, in the underlying State Litigation, the Defendants have been sued for more than $20 million in compensatory damages. Punitive damages and interest also are sought. It is also undisputed that the policy of insurance issued by Princeton to ICA provides excess liability coverage in the amount of $3 million per occurrence and in the aggregate as well. Because the Princeton policy is excess insurance, it will provide a defense and/or pay indemnity after certain specified underlying insurance has been completely exhausted. Mrs. Snelling and the Defendants take the view that the underlying insurance is provided by National Union's policy and the Kinsale policy. National Union's policy provides the Defendants with up to $500,000 coverage for each accident. The Kinsale policy provides the defendants with up to $1 million of coverage for each occurrence (with a general aggregate amount of $2 million and a special limit for assault and battery claims of $250,000). Thus, it is not disputed that the amount sought in the underlying State Litigation is in excess of the insurance that is provided by the National Union and Kinsale policies.

The Defendants' motion, although asserting the absence of a case or controversy, is actually a ripeness challenge. For instance, the Defendants assert that "Princeton has prematurely sought declaratory relief . . . ." They continue by alleging that, "[b]ecause there is no present obligation to provide a defense or to indemnify Defendants under Princeton's excess insurance policy, Princeton fails to allege any facts establishing an actual case or controversy between the parties."[1]

The Declaratory Judgment Act gives district courts discretion in deciding whether or not to hear an action filed pursuant to the Act. "[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Our Court of Appeals has held "that this discretion should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937).

Of course, declaratory judgments are routinely granted to determine coverage between insurers and insureds. See State

---

[1] Defendants also contend that the Court lacks subject matter jurisdiction in part because the complaint of Princeton fails to name National Union and Kinsale as interested parties who, according to the Defendants, are indispensable. That really is not a jurisdictional issue.

Farm & Cas. Co. v. Singleton, 774 F. Supp. 2d 773, 776 (D.S.C. 2009).   "This case presents the classical archetype for the appropriate use of a declaratory judgment action.   An insurance company, which is called upon to provide coverage in circumstances which do not readily appear to fall within the scope of coverage, seeks a judicial determination that its policy affords no coverage."   Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 970 (4th Cir. 1994) (Niemeyer, J., dissenting).

The Supreme Court has explained that the threshold question when determining jurisdiction over a declaratory judgment action is "whether there is an 'actual controversy' within the meaning of the Declaratory Judgment Act, since the District Court is without power to grant declaratory relief unless such a controversy exists."   Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941).   Here, Defendants argue that Princeton "has failed to allege an actual, immediate, and substantial controversy between the parties for which the Court could provide conclusive resolution."   Defs.' Mem. Supp. Mot. Dismiss 6, Docket No. 7.   But the Supreme Court has already decided this issue.   Cf. 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2760 (3d ed. 1998) (observing that, once the Court decided this issue in Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 271, (1941) "the

use of declaratory judgments in insurance cases has been very common").

In Pacific Coal, Maryland Casualty issued a liability insurance policy to Pacific Coal Company. Pacific Coal, 312 U.S. at 271. Subsequently, a Pacific Coal truck driver was involved in an accident with a third party, Orteca, who sued Pacific Coal in Ohio state court. Id. Maryland Casualty then filed a declaratory judgment action in federal district court against Pacific Coal and Orteca, claiming that it would not be liable on the underlying policy if Orteca prevailed in the state litigation. Id. at 271-72. In deciding whether a "controversy" existed, the Supreme Court explained that "[i]t is clear that there is an actual controversy between petitioner and the insured." Id. at 274.

This case presents facts identical in all relevant respects to those presented in Pacific Coal. Here, an insured faces a state tort action, and the liability insurer, which is not a party to the tort action, faces potential liability on its policy if the plaintiff in the state litigation prevails. With no present facts on which to distinguish legally this case from Pacific Coal, there is no reason to stray from the Supreme Court's holding that "there is an actual controversy between [Plaintiff] and the insured." Id.

Defendants further argue that Princeton's claim is not ripe for review because ICA has not yet filed a claim with Princeton under the Princeton policy. Defs.' Rebuttal Br. 2-5, Docket No. 11. But this line of attack is undermined by the fact that Pacific Coal likewise had not filed a claim with Maryland Casualty at the time of the declaratory judgment action in that case. The state litigation in Pacific Coal had not proceeded to judgment when the Supreme Court issued its opinion; nevertheless, ripeness was no ground for declining federal jurisdiction. See Pac. Coal, 312 U.S. at 271.

There is, of course, at this time no dispute over Princeton's duty to defend because National Union is providing a defense in the State Litigation. The question then becomes whether there is an actual controversy that is ripe for review respecting Princeton's duty to indemnify.

The answer to that is yes. An instructive decision on this point is Builders Mut. Ins. Co. v. Futura Group, L.L.C., 779 F. Supp. 2d 529 (E.D. Va. 2011). Builders Mutual was decided not on jurisdictional grounds, but on the issue of whether to stay the federal declaratory judgment action. It nonetheless is instructive about the existence of a dispute over the duty to indemnify. In Builders Mutual, the Court recognized that there was an actual, ripe dispute between the insurance company and its insured. The insurance company in Builders Mutual was

11

seeking a declaration that it had no duty to defend or indemnify its insured in an underlying state litigation. The Court in Builders Mutual denied the motion to stay the declaratory judgment action and proceeded to adjicate the case on the merits. The Court did not dismiss the action for lack of jurisdiction.

The facts in Builders Mutual are parallel to the facts here. Certainly, it is undisputed in this case that the Defendants have made demands upon Princeton to provide coverage under its policy. It is undisputed here that the amount sought in the State Litigation far exceeds the underlying policy limits provided by National Union and Kinsale and that the Defendants' demand for the policy protection afforded by the Princeton policy is certainly a concrete one that is ripe for decision.

Other decisions support a finding of ripeness. For example, in Nautilus Ins. Co., 15 F.3d at 375-76, the Fourth Circuit explained that it has "frequently approved" federal declaratory judgment actions in cases where insurance coverage is disputed, even before judgment has been rendered in the underlying state litigation); Am. Auto. Ins. Co. v. Smith, 2013 U.S. Dist. LEXIS 91763, at *6 (S.D.W. Va. July 1, 2013); United Fin. Cas. Co. v. Newsom, 2010 U.S. Dist. LEXIS 126692, at * 13 (S.D.W. Va. Nov. 30, 2010) ("Generally, an insurance company's action seeking a declaration that it has no duty to defend or

indemnify an insured against a third party's tort claim qualifies as an actual controversy.") (citing Nautilus, 15 F. 3d at 375); Horner v. Pharmacists Mut. Ins. Co., 2010 U.S. Dist. LEXIS 140997, at *6-7 (E.D. Va. Dec. 17, 2010) (finding jurisdiction in a suit seeking a declaratory judgment in a duty to indemnify case where the state tort action was pending). Under settled law, this action qualifies as ripe.

Having determined that Princeton has met the "actual controversy" threshold, it is necessary next to analyze Princeton's allegations under the prudential factors outlined by the Fourth Circuit and the Supreme Court.

As Princeton correctly argues, the real issue in this case is not whether there is a case or controversy or whether the matter is ripe for decision, it is whether the Court should defer acting on Princeton's request for declaratory judgment until the State Litigation is concluded.

Nautilus Ins. Co., 15 F.3d 371, sets out the principles that guide the decision of a district court in this circuit respecting whether to exercise jurisdiction in a declaratory action.   Citing Quarles, 92 F.2d at 325, the Nautilus court instructed that,

> [A] federal district court should normally
> entertain a declaratory judgment action
> within its jurisdiction when it finds that
> the declaratory relief sought (i) will serve
> a useful purpose in clarifying and settling

13

the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Id. at 375 (internal quotations omitted). Furthermore, "when a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts," its discretion must also be guided by "considerations of federalism, efficiency, and comity," in accordance with Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992). Nautilus, 15 F.3d at 376. The Nautilus court further reaffirmed Mitcheson by instructing district courts to consider the following three additional factors:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law.

Id. at 377 (internal quotations and citations omitted). Finally, Nautilus added one more factor: "whether the declaratory judgment action is being used merely as a device for procedural fencing – that is, . . . to achieve a federal hearing in a case otherwise not removable." Id. (internal quotations and citations omitted).

14

Needless to say, district courts attempting to apply all these "guiding" principles often have reached different determinations in deciding whether to hear declaratory judgment actions in insurance cases. Compare, e.g., Monticello Ins. Co. v. Baecher, 857 F. Supp. 1145, 1150 (E.D. Va. 1994) (declining jurisdiction after analyzing the Nautilus factors), with Am. Nat'l Prop. & Cas. Co. v. Weese, 863 F. Supp. 297, 302 (S.D.W. Va. 1994) ("After careful weighing of the factors outlined in Nautilus, the Court concludes this action is appropriately subject to the jurisdiction of this Court."). Over the next few years, however, there was an attempt to streamline the analysis.

In Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995) (citation omitted), the Supreme Court explained that, "where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permit[s] the federal declaratory action to proceed." One year later, the Fourth Circuit expounded on this language, holding that: "[t]o whatever extent our previous decisions have implied further constraints on district court discretion, see, e.g., Nautilus, 15 F.3d at 375, those decisions must give way to the clear teachings of Wilton." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257-58 (4th Cir. 1996).

In receding from Nautilus, the Poston court did not enumerate which Nautilus factors the Wilton standard had supplanted and which Nautilus factors had remained intact. And, notwithstanding the best efforts of the Court of Appeals to clarify the analysis, this circuit since has reverted to use of the Nautilus factors, with little regard for Wilton or Poston. See Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698, 701 (4th Cir. 2009); Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004); Myles Lumber Co. v. CAN Fin. Corp., 233 F.3d 821, 824 (4th Cir. 2000); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998).

In light of those decisions, it is appropriate to analyze the jurisdictional issue here with reference to the Nautilus factors which are:  (i) whether the state has a strong interest in adjudicating the issues raised in the declaratory action; (ii) whether the state courts could resolve the issues raised in the declaratory action more efficiently than the federal courts; (iii) whether adjudicating the declaratory action in this Court would result in unnecessary entanglement between the federal and state court systems because of overlapping issues of fact or law; and (iv) whether the declaratory action is being used merely as a vehicle for forum-shopping.

The Commonwealth of Virginia does not have a strong interest in resolving the single issue presented in Princeton's Amended Complaint: whether Princeton, in the event that Defendants, in the State Litigation, are found liable for damages in excess of the combined limits of the Kinsale and National Union Policies, has an obligation to indemnify Defendants under the Princeton Policy. See Am. Compl. ¶ 29. As an initial matter, "[w]hether and under what circumstances a reinsurer can be reached through a judgment against the insured are questions of local law." Brillhart v. Excess Ins. Co., 316 U.S. 491, 496 (1942). "While this is certainly a consideration" in determining whether the state has a strong interest in adjudicating the issue, "it is not determinative." USF Ins. Co. v. Stowers Trucking, LLC, 684 F. Supp. 2d 786, 791 (S.D.W.Va. 2010); see also Nautilus, 15 F.3d at 378 ("[A]ll of the issues of insurance coverage raised here are governed by the substantive law of the State of Maryland. But that alone provides no reason for declining to exercise federal jurisdiction."). As Nautilus advises, States have a strong interest, for the purposes of analyzing federal jurisdiction, "when the questions of state law involved are difficult, complex, or unsettled." Nautilus, 15 F.3d at 378. However, nothing here indicates that interpretation of the Princeton Policy involves any difficult, complex, or unsettled questions

17

of Virginia insurance law.   Rather, the interpretation involves merely "the routine application of settled principles of law to particular disputed facts."  Id.

> [Virginia's] interest in having those issues decided in its own courts, which is thus no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision, is not sufficiently compelling to weigh against the exercise of federal jurisdiction.

Id.

Second, efficiency concerns do not weigh in favor of declining jurisdiction.   In analyzing efficiency concerns, the test is "'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceedings' that are already 'pending in the state courts.'" Id. (quoting Brillhart, 316 U.S. at 495).   The coverage issue raised in this action falls entirely outside the scope of the State Litigation.   Moreover, Princeton is not a party to the State Litigation and thus its interests will not be settled in that proceeding.   And although the Defendants could implead Princeton in the State Litigation, Va. R. Civ. P. 3:13, the clear distinction between the underlying tort issue and the contract interpretation issue makes adjudication of the latter no more efficient in a state court than in a federal court. Further, even if the Defendants were to implead Princeton in the

18

State Litigation, that claim likely, indeed almost certainly, would be severed from the tort component of the suit.

"Running alongside these basic efficiency concerns is the interest in promoting comity between federal and state courts." Mitcheson, 955 F.2d at 239. Entanglement can result when the state and federal courts make conflicting decisions on issues of fact or law. See Nautilus, 15 F.3d at 377. Defendants point to the Princeton policy's follow-form provision and argue that it would require this Court to interpret the Kinsale and National Union Policies, possibly resulting in conflicting interpretations with the state court. See Defs.' Rebuttal Br. Supp. Mot. Dismiss 6, Docket No. 11. Defendants are incorrect. That the Princeton policy is based on the same terms of the underlying policies does not require this Court to interpret the underlying policies. The only purpose of the follow-form provision is to perfectly align the risks covered by the excess and primary insurers. See United Fire & Cas. Co. v. Arkwright Mut. Ins. Co., 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999). By looking solely at the Princeton policy, the Court can decide Princeton's request for declaratory relief by determining whether or not Princeton would be liable to the Defendants if they are found liable for damages in excess of the coverage provided by the underlying policies. Additionally, the liability of the insurers on the Kinsale and National Union

19

Policies is not an issue in the State Litigation, nor are those primary insurers named as defendants.  Thus, even if the Court did need to interpret the underlying policies, the state court has no reason to issue an opinion as to those policies, thereby removing the potential for any conflicts.  This case, thus, presents no risk of entangling its findings with those of the state court.

Finally, nothing indicates that Princeton has strategically filed its declaratory action in federal court as a means of forum-shopping or procedural fencing.  "Procedural fencing occurs when . . . 'a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum.'"  Riley v. Dozier Internet Law, PC, 371 F. App'x 399, 403 (4th Cir. 2010) (emphasis added) (quoting Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir. 2006)).  Procedural fencing has not occurred in this case because the single issue presented in this action is not an issue in the State Litigation.

Two recent decisions of this Court confirm the foregoing analysis.  First, in Zurich American Ins. Co. v. Public Storage, 697 F. Supp. 2d 640 (E.D. Va. 2010), Judge Ellis applied the Nautilus factors to circumstances quite like the ones presented by this case. Second, in Builders Mut. Ins. Co., Judge Davis, in deciding whether to stay the declaratory judgment action pending

resolution of the underlying state case, explained fully that
Nautilus is to be applied to circumstances much like this.
Builders Mut. Ins. Co., 779 F. Supp. 2d at 529.

## B. Indispensable Party Issue

**INDISPENSABLE PARTY ISSUE**

The Defendants also claim that Princeton has failed to join
indispensable parties, the underlying insurers Kinsale and
National Union, and therefore, the case should be dismissed.
Defs.' Mem. Supp. Mot. Dismiss 7-8, Docket No. 7.   Thus,
Defendants say necessitates dismissal of the case, because
without those parties, the Court cannot make a decision that
would clarify the legal relations between the parties or bind
any of the insurers who are not presently represented in this
case.   Id.  Contrary to the Defendants' assertions, the
underlying insurers are not indispensable parties, and the
failure to join them does not necessitate dismissal.

Fed. R. Civ. P. 19 governs the joining of parties to a law
suit.  It provides that a party must be joined if:

> (A) in that person's absence, the court cannot
> accord complete relief among existing parties;
> or (B) that person claims an interest relating
> to the subject of the action and is so situated
> that disposing of the action in the person's
> absence may: (i) as a practical matter impair
> or impede the person's ability to protect the
> interest; or (ii) leave an existing party
> subject to a substantial risk of incurring

> double, multiple, or otherwise inconsistent
> obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  To determine who is a necessary and indispensable party, courts must engage in a two-step inquiry. Horner v. Pharmacists Mut. Ins. Co., 2010 U.S. Dist. LEXIS 140997, at * 11 (E.D. Va. Dec. 17, 2010) (citing Owens-Ill., Inc. v Meade, 186 F.3d 435, 440 (4th Cir. 1999)).  First, the Court must determine "whether a party is necessary" under Rule 19(a) and, if so, the Court must order joinder.  Horner, at *11. If joinder is impossible because it would destroy diversity jurisdiction, then  the Court must determine whether the party is "indispensable" under Rule 19(b).  Id.  If the party is indispensable, and "the proceeding cannot continue in its absence," then the Court must dismiss the action.  Id.  However, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  Id. (quoting Meade, 186 F.3d at 441).  The party moving for dismissal has the burden of showing that the party not joined is necessary and indispensable.  Horner, at * 12.

## The Underlying Insurers are not Necessary Parties

Parties are considered necessary in two situations: "(1) if 'in that person's absence, the court cannot accord complete

relief among existing parties;' and (2) if the person's absence would 'impair or impede the person's ability to protect the interest' or 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" Horner, at * 13 (quoting Fed. R. Civ. P. 19(a)(1)).

In this case, National Union and Kinsale are not necessary parties.  Princeton merely seeks a declaration that it has no duty to indemnify ICA.  The presence or absence of National Union and Kinsale will not preclude the Court from granting or denying the relief sought by Princeton.  Similarly, the presence or absence of National Union and Kinsale in this action will not affect their interests in the underlying State Litigation. Whether National Union and Kinsale are present in this declaratory judgment action has no bearing on any liability that may result from the State Litigation.  See Horner, at * 13-14 (holding that even the nonjoinder of the named insured in a declaratory judgment action did not prohibit the Court from hearing the case).  Finally, nonjoinder of Kinsale and National Union does not risk leaving Princeton with double or multiple obligations.  As an insurer that would pay the excess liability not covered by the underlying insurers, Princeton only incurs liability after the underlying policies are exhausted. Princeton's ability to defend its interests is not affected by

the nonjoinder of the underlying insurers in a declaratory judgment action.   Similarly, the underlying insurers are not affected in their own defense of their interests by nonjoinder in this suit.

Because Kinsale and National Union are not necessary parties, the failure to join them in this case is not fatal to Princeton's claim.   An inquiry into whether they are indispensable is not required.   To the extent dismissal is sought for failure to join Kinsale and National Union, the motion will be denied.

### CONCLUSION

For the foregoing reasons, the DEFENDANTS' MOTION TO DISMISS (Docket No. 6) will be denied.

It is so ORDERED.

/s/    _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 21, 2013

24